UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL KUZMA,

                Plaintiff,

v.                                  **DECISION AND ORDER**
                                     13-CV-1175S

CENTRAL INTELLIGENCE AGENCY,

                Defendant.

## I. INTRODUCTION

Plaintiff Michael Kuzma challenges Defendant Central Intelligence Agency's response to his request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records and photographs pertaining to himself, generally, and to his participation in a January 16, 2010 protest with Cindy Sheehan[1] and others near CIA headquarters in Langley, VA. Presently before this Court are the parties' Motions for Summary Judgment, brought under Rule 56 of the Federal Rules of Civil Procedure. (Docket Nos. 10, 12.) For the following reasons, the CIA's motion is granted and Plaintiff's motion is denied.

## II. BACKGROUND

**A.    Plaintiff's FOIA Request**

The facts concerning Plaintiff's FOIA request are generally not in dispute.[2]

On February 15, 2013, Plaintiff submitted a FOIA request to the CIA seeking "all

---

[1] Cindy Sheehan is a well known antiwar activist. See, e.g., United States v. Sheehan, 512 F.3d 621 (D.C. Cir. 2008) (involving a 2005 Sheehan antiwar protest).

[2] The facts are drawn from Defendant's Statement of Undisputed Facts and Plaintiff's response thereto. (Docket Nos. 10-3, 12-2.)

1

records maintained by your agency pertaining to me, including but not limited to files and documents captioned in, or whose captions include my name in the title for the years 2000 to the present." (Defendant's Statement of Undisputed Facts ("Defendant's Statement"), Docket No. 10-3, ¶ 1; Declaration of Martha M. Lutz ("Lutz Decl."), Docket No. 10-1, Exhibit A.) Plaintiff's request specifically included "any and [all] records that were generated as a result of my participation in a protest that took place near CIA Headquarters in Langley, Virginia with Cindy Sheehan and other activists on January 16, 2010" and "copies of photographs that were taken of me by CIA personnel and/or its contractors on that day." (Id.)

The CIA responded by letter dated April 15, 2013, wherein it acknowledged receipt of Plaintiff's request and informed him that it was unable to locate any responsive information or records. (Defendant's Statement, ¶ 2; Lutz Decl., Exhibit B.) The CIA also advised Plaintiff that "with respect to responsive records that would reveal a classified connection to the CIA . . . the CIA can neither confirm nor deny the existence or nonexistence of records responsive to your request."[3] (Id.)

By letter dated April 25, 2013, Plaintiff appealed the CIA's response, insisting that the CIA photographed him at the protest and arguing that it conducted an inadequate search of its records systems. (Defendant's Statement, ¶ 3; Lutz Decl., Exhibit C.)

The CIA subsequently advised Plaintiff by letter dated June 25, 2013, that his

---

[3]This is commonly known as a "Glomar response." The Glomar doctrine permits an agency, pursuant to FOIA's statutory exemptions, to refuse to confirm or deny the existence of documents responsive to a FOIA request. See Ctr. for Constitutional Rights v. CIA, 765 F.3d 161, 164 n.5 (2d Cir. 2014); Wilner v. Nat'l Sec. Agency, 59 F.3d 60, 67-68 (2d Cir. 2009). The term is derived from the *Hughes Glomar Explorer*, purportedly an oceanic research vessel now known to have been built to recover a sunken Soviet submarine. See Phillippi v. CIA, 546 F.2d 1009, 1010-12 (D.C. Cir. 1976).

Case 1:13-cv-01175-WMS   Document 16   Filed 04/16/15   Page 3 of 13

appeal was under review. (Defendant's Statement, ¶ 4; Lutz Decl., Exhibit D.) Approximately three months later, the CIA notified Plaintiff by letter dated September 30, 2013, that his appeal was denied. (Defendant's Statement, ¶ 4; Lutz Decl., Exhibit E.) The CIA again advised Plaintiff that it could not locate any responsive records and it reiterated its Glomar response in conjunction with asserting exemptions under 5 U.S.C. §§ 552 (b)(1) and (3) ("Exemptions 1 and 3"). (Id.)

Plaintiff thereafter filed suit in this court on December 6, 2013. (Defendant's Statement, ¶ 5; Docket No. 1.) On April 30, 2014, the CIA filed a motion for summary judgment, along with its Vaughn index.[4] (Docket Nos. 10, 10-1, 13.) The Vaughn index (comprised of the Declaration of Martha M. Lutz (Docket No. 10-1) and the Supplemental Declaration of Martha M. Lutz ("Supp. Lutz Decl.") (Docket No. 13)) explains the CIA's search for responsive records and details its Glomar response in conjunction with Exemptions 1 and 3. Plaintiff filed his own motion for summary judgment on June 2, 2014. (Docket No. 12.) After full briefing, which concluded on June 19, 2014, this Court took the motions under advisement without oral argument.

**B.   The CIA's Vaughn Index**

As indicated above, the Vaughn index was prepared by Martha M. Lutz, Chief of the Litigation Support Unit of the CIA. (Lutz Decl., ¶¶ 1-5.) Therein, Lutz states that upon receipt of Plaintiff's FOIA request, the CIA forwarded it as a matter of course to the Information and Privacy Coordinator, Information Management Services ("IMS"). (Lutz

---

[4] Arising out of the litigation in Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), a Vaughn index is an affidavit or series of affidavits explaining an agency's treatment of a plaintiff's FOIA request and detailing the agency's claimed exemptions. See Halpern v. Fed. Bureau of Investigation, 181 F.3d 279, 291 (2d Cir. 1999).

Decl., ¶ 11.) IMS professionals then assessed Plaintiff's request to determine which of five CIA directorates might reasonably be expected to possess responsive documents: the National Clandestine Service ("NCS"); the Directorate of Intelligence; the Directorate of Science and Technology; the Directorate of Support ("DS"); and the Director's Area. (Lutz Decl., ¶¶ 11, 12.)

The CIA identified the NCS[5] and DS[6] directorates as reasonably likely to possess responsive records and then searched those records systems using the search term "Michael Kuzma." (Lutz Decl., ¶¶ 20, 21, 22, 24; Lutz Supp. Decl., ¶ 4.) Those searches failed to locate responsive records or photographs that reflected an open and acknowledged CIA affiliation with Plaintiff. (Lutz Decl., ¶¶ 21, 22, 24.) As for any responsive records that would reveal a classified connection to the CIA—as opposed to an open and acknowledged connection—the CIA invokes a Glomar response, because in its view, confirming or denying the existence or nonexistence of such records would itself reveal classified information that is protected from disclosure for national security purposes. (Lutz Decl., ¶¶ 26, 34.) Specifically, the CIA has determined that the mere fact of the existence or nonexistence of records responsive to Plaintiff's request for all records pertaining to himself that would reveal a classified nexus between the CIA and Plaintiff is

---

[5]The NCS directorate is responsible for the clandestine collection of foreign intelligence from human sources. (Lutz Decl., ¶ 13.) Its records system contains information pertaining to individuals who are of foreign intelligence or counterintelligence interest to the CIA and other U.S. government agencies. (Id.)

[6]The DS directorate is responsible for providing the CIA with mission-critical services, including the protection of CIA personnel and facilities, general security matters, facilities, communications, logistics, training, financial management, medical services, and human resources. (Lutz Decl., ¶ 16.) Its records system contains information pertaining to all current and former staff and contract CIA employees, as well as individuals for whom security processing or evaluation has been required. (Lutz Decl., ¶¶ 22, 23.)

classified and exempt from release pursuant to Exemptions 1 and 3.  (Lutz Decl., ¶ 34.)

### III. DISCUSSION

Plaintiff moves for summary judgment on the basis that the CIA's search for responsive records was inadequate and its Glomar assertion and reliance on Exemptions 1 and 3 are improper.  The CIA seeks summary judgment on the grounds that its search for records was sufficient and its response to Plaintiff's FOIA request comports with the applicable law in all respects.

**A.     Legal Standard**

Under the FOIA, "every federal agency is required . . . to make its records 'promptly available to any person' upon receipt of a reasonably articulated request."  Phillips v. Immigration & Customs Enforcement, 385 F. Supp. 2d 296, 301 (S.D.N.Y. 2005) (quoting 5 U.S.C. § 552(a)(3)).  The FOIA embodies Congress's desire that an open government allow for "an informed citizenry to hold the governors accountable to the governed."  Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 478 (2d Cir. 1999) (internal quotations and citations omitted); Phillips, 385 F. Supp. at 301 ("FOIA reflects a strong Congressional policy of requiring full public disclosure of documents and records maintained by federal agencies.").  To that end, the FOIA requires the fullest possible public disclosure of government-kept records, tempered by the need to maintain the confidentiality of sensitive information based on narrowly tailored exemptions intended to protect certain interests.

Federal courts are required to conduct *de novo* review of an agency's decision to withhold requested records under the FOIA.  Massey v. FBI, 3 F.3d 620, 622 (2d Cir. 1993).  The preferred method of doing so is by summary judgment.  See Fox News

Network, LLC v. U.S. Dep't of the Treasury, 739 F. Supp. 2d 515, 532 (S.D.N.Y. 2010); Jones-Edwards v. Appeal Bd. of NSA, 352 F. Supp. 2d 420, 423 (S.D.N.Y. 2005).

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609, 26 L.Ed.2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

A plaintiff is entitled to summary judgment in a FOIA case "when an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption." New York Times Co. v. U.S. Dep't of Def., 499 F. Supp. 2d 501, 509 (S.D.N.Y. 2007). Conversely, an agency is entitled to summary judgment when it has thoroughly searched for responsive records and has articulated reasonably detailed explanations why any withheld documents fall within an exemption. Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994); see also Wilner v. Nat'l Sec. Agency, 592 F.3d 60, 69 (2d Cir. 2009).

To carry its burden, the defending agency may rely on a Vaughn index, which

consists of "affidavits to the court that describe with reasonable specificity the nature of the documents at issue and the justification for nondisclosure; the description provided in the affidavits must show that the information logically falls within the claimed exemption." Lesar v. United States Dep't of Justice, 636 F.2d 472, 481 (D.C. Cir. 1980); see also Halpern v. Fed. Bureau of Investigation, 181 F.3d 279, 291 (2d Cir. 1999) (citing Lesar). The function of the Vaughn index is three-fold: "(1) it forces the government to analyze carefully any material withheld, (2) it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, and (3) it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court." Halpern, 181 F.3d at 291 (quoting Keys v. United States Dep't of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987)).

Agency affidavits, including the Vaughn index, are presumed to have been made in good faith. See Carney, 19 F.3d at 812. This presumption is not rebutted by bare allegations or speculative claims that additional documents exist. See Grand Cent., 166 F.3d at 489. "If the agency's submissions are facially adequate, summary judgment is warranted unless the plaintiff can make a showing of bad faith on the part of the agency or present evidence that the exemptions claimed by the agency should not apply." Garcia v. United States Dep't of Justice, Office of Info. & Privacy, 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002)(citing Carney, 19 F.3d at 812); Ctr. for Constitutional Rights v. CIA, 765 F.3d 161, 166 (2d Cir. 2014)(citing Wilner, 592 F.3d at 73) (agency declarations "are accorded a presumption of good faith," and "when such declarations are 'not controverted by either contrary evidence in the record nor by evidence of agency bad faith,' summary judgment for the government is warranted."); Triestman v. United States Dep't of Justice,

DEA, 878 F. Supp. 667, 672 (S.D.N.Y. 1995).

**B.     Analysis**

    **1.     Adequacy of the CIA's Search for Responsive Records**

Plaintiff maintains that the CIA's search for responsive records was inadequate. In response to a request for records under the FOIA, agencies are required to conduct a search "reasonably designed to identify and locate responsive documents" but need not "take extraordinary measures to find the requested records." Kennedy v. United States Dep't of Justice, 03-CV-6077, 2004 WL 2284691, at *2 (W.D.N.Y. 2004) (citing Garcia, 181 F. Supp. 2d at 368). If an agency sufficiently demonstrates that it has conducted a reasonable search for responsive documents, it has fulfilled its obligations under the FOIA. See Garcia, 181 F. Supp. 2d at 366 (citing Weisberg v. United States Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). The agency can meet its burden of showing a good faith search by supplying affidavits from appropriate officials setting forth facts indicating that a thorough search was conducted. See Rabin v. United States Dep't of State, 980 F. Supp. 116, 120 (E.D.N.Y. 1997).

Plaintiff's challenge to the adequacy of the CIA's search is twofold. First, he argues that the Vaughn index lacks the detail necessary for this Court to assess the adequacy of the CIA's search. Second, he argues that the CIA's search was inadequate because the Vaughn index fails to (1) identify by name the individuals who conducted the searches, (2) explain when and how the searches were conducted; (3) identify the specific files searched and the search terms used; (4) state that all files likely to contain responsive records were searched; and (5) note whether potentially responsive records were ever destroyed or

transferred to another agency. Both arguments fail.

This Court first finds that the CIA's Vaughn index sufficiently details the CIA's search for responsive records. (Lutz Decl., ¶¶ 11–25; Lutz Supp. Decl., ¶¶ 4, 5.) Agencies are not required to describe "with meticulous documentation the details of an epic search for the requested records," Perry v. Block, 684 F.2d 121, 127 (D.C.Cir. 1982) (per curiam), though they must supply more than "glib government assertions of complete disclosure or retrieval," id. at 126. Here, Lutz's recitation is thorough and exhaustive. It details the CIA's search efforts in non-conclusory terms and specifically explains the agency's search methods and procedures. See Grand Cent. P'ship, 166 F.3d at 478 (noting that agency affidavits must contain "reasonable specificity of detail rather than merely conclusory statements"); Lutz Decl., ¶¶ 11–25; Lutz Supp. Decl., ¶¶ 4, 5.

Second, Plaintiff cites no authority requiring the inclusion of the various points of omission that he contends render the Vaughn index insufficiently detailed. For example, the CIA is not required to identify by name the individuals who conducted the various searches, nor is it required to specify the precise time and date of each search. In this case, it is enough that the search took place between the time of Plaintiff's request and the CIA's response, and Lutz details that IMS personnel determined that the NCS and DS directorates were reasonably likely to possess responsive records, and that appropriately trained Information Review Officers ("IRO") in each of those directorates conducted searches using the search term "Michael Kuzma" as part of their regular duties. (Lutz Decl., ¶¶ 11, 13, 16, 18, 19, 20–25.) Lutz further discloses that the threat-assessment unit and individuals acting as "special policemen" to protect CIA headquarters also searched for any photographs taken during any protests in January 2010. (Lutz Decl., ¶ 24.)

Consequently, from the Vaughn index, Plaintiff is informed of what searches were conducted, when they were conducted, how they were conducted, and who conducted them. Lutz's recitation also discloses that all files likely to contain responsive documents were searched (those housed in the NCS and DS directorates), the search term used ("Michael Kuzma"), and that no potentially responsive records were ever destroyed or transferred to another agency. (Lutz Supp. Decl., ¶¶ 4, 5.) This establishes the sufficiency of the CIA's search. See Rabin, 980 F. Supp. at 120.

Finding no merit in Plaintiff's contentions otherwise, this Court finds that the CIA conducted a reasonable search for responsive documents, thereby fulfilling its search obligations under the FOIA.[7] See Garcia, 181 F. Supp. 2d at 366.

### 2. The CIA's Glomar Response

Plaintiff maintains that the CIA's Glomar response is improper. A Glomar response—one that neither confirms nor denies the existence of documents responsive to a request—is permissible when any response to a FOIA request, positive or negative, would cause harm cognizable under one of the FOIA exemptions. See Wilner, 592 F.3d at 68. "To properly employ the Glomar response to a FOIA request, an agency must 'tether' its refusal to respond to one of the nine FOIA exemptions—in other words, "a government agency may . . . refuse to confirm or deny the existence of certain records . . . if the FOIA exemption would itself preclude the acknowledgment of such documents." Id. (citing Minier v. CIA, 88 F.3d 796, 800 (9th Cir. 1996)).

---

[7]To the extent he relies on it, Plaintiff's insistence that responsive records *must* exist because he believes he was photographed at the protest is insufficient to overcome the presumption of good faith attached to the Vaughn index. See Grand Cent., 166 F.3d at 489 (noting that the presumption of good faith enjoyed by agency affidavits is not overcome by bare allegations or speculative claims that additional documents exist).

Exemptions in the FOIA are to be "narrowly construed since 'disclosure, not secrecy, is the dominant objective of the Act.'" Kennedy, 2004 WL 2284691, at *2 (quoting Dep't of the Air Force v. Rose, 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976)). Nonetheless, when responsive records fall within any of the applicable exemptions, disclosure is not required. See FLRA v. United States Dep't of Veterans Affairs, 958 F.2d 503, 508 (2d Cir. 1992). The agency bears the burden of proving the applicability of its claimed exemption, and may do so through a detailed affidavit "showing that the information logically falls within the claimed exemptions." Wilner, 592 F.3d at 68 (citing Minier, 88 F.3d at 800).

When relying on a Glomar response, the agency must "explain in as much detail as possible the basis for [its] claim that it can be required neither to confirm nor to deny the existence of the requested records." Wilner, 592 F.3d at 68 (citing Phillippi, 546 F.2d at 1013). Unless controverted by evidence or by a showing of bad faith, the agency's affidavit is entitled to substantial weight. See Wilner, 592 F.3d at 68 (citing Minier, 88 F.3d at 800).

Here, the CIA's Glomar response is tethered to Exemptions 1 and 3, which provide as follows:

- Exemption 1: Exempting matters "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive Order."[8]

- Exemption 3: Exempting matters "specifically exempted from disclosure by statute (other than section 552b of this title), if that statute (A) requires that the matters be withheld from the public in such a manner as to leave

---

[8] 5 U.S.C. § 552(b)(1).

11

> no discretion on the issue or establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph."[9]

Plaintiff contends that the CIA cannot shield records and photographs from the January 16, 2010 protest using a Glomar response. In doing so, Plaintiff maintains that the CIA is seeking to avoid public embarrassment and conceal its illegal monitoring of domestic political dissent. But the Vaughn index makes clear that the CIA asserts its Glomar response only as to records pertaining generally to Plaintiff himself. (Lutz Decl., ¶¶ 33, 34.) The CIA does not assert a Glomar response concerning the January 16, 2010 protest.

The CIA responded to Plaintiff's request for records and photographs from the January 16, 2010 by advising him that it could locate no such records or photographs. (Lutz Decl., ¶¶ 20-25.) The CIA searched not only the records systems likely to produce responsive records, it directed its threat-assessment unit and CIA personnel employed as special policemen to individually search for any photographs taken during *any* protests in January 2010. (Lutz Decl. ¶ 24.) None were found. (Id.) Plaintiff's arguments are therefore unpersuasive. In any event, this Court examined the CIA's Glomar response and is satisfied, based on Lutz's thorough explanation, that the Glomar response is properly asserted and appropriately tethered to Exemptions 1 and 3. (Lutz Decl., ¶¶ 26–56.)

---

[9] 5 U.S.C. § 552(b)(3).

## IV. CONCLUSION

Upon review of the Vaughn index and consideration of the parties' arguments, this Court finds that the CIA has performed an adequate search for records responsive to Plaintiff's request and has properly asserted its Glomar response in conjunction with Exemptions 1 and 3. Consequently, the CIA is entitled to summary judgment and its motion seeking such relief is granted. See Carney, 19 F.3d at 812. Plaintiff's motion for summary judgment is denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 10) is GRANTED.

FURTHER, that Plaintiff's Motion for Summary Judgment (Docket No. 12) is DENIED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:   April 15, 2015
         Buffalo, New York

                                                /s/William M. Skretny
                                                WILLIAM M. SKRETNY
                                                Senior United States District Judge